# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SCOTT LAUTENBAUGH, on behalf of himself and the class he seeks to represent, | ) ) ) No. _____ ) |
| Plaintiffs, | ) ) |
| v. | ) **CLASS ACTION COMPLAINT FOR** ) **DECLARATORY AND INJUNCTIVE** |
| NEBRASKA STATE BAR ASSOCIATION, | ) **RELIEF** ) |
| WARREN R. WHITTED, JR., President, Nebraska State Bar Association, in his official capacity; | ) ) ) ) ) |
| MARSHA E. FANGMEYER, President-Elect, Nebraska State Bar Association, in her official capacity; | ) ) ) ) |
| G. MICHAEL FENNER, President-Elect Designate, Nebraska State Bar Association, in his official capacity, | ) ) ) ) |
| Defendants. | ) ) |

Plaintiff, Scott Lautenbaugh, by and through his undersigned attorneys, hereby files this Complaint against the Nebraska State Bar Association, Warren R. Whitted, Jr., President of the Nebraska State Bar Association; Marsha E. Fangmeyer, President-Elect of the Nebraska State Bar Association; and G. Michael Fenner, President-Elect Designate of the Nebraska State Bar Association; in their official capacities ("Defendants"), on behalf of himself and the class he seeks to represent and alleges as follows:

1

## NATURE OF THE CLAIMS

1.      This civil rights class action seeks immediate injunctive and declaratory relief to redress and prevent the deprivation of Plaintiff Lautenbaugh's rights, and the rights of the class members he seeks to represent, against compelled speech and compelled association protected by the First and Fourteenth Amendments to the United States Constitution by practices and policies of Defendants acting under color of state law.

2.      Specifically, those rights have been violated by Defendants' imposition of mandatory dues as a condition of membership to the Nebraska State Bar Association ("NSBA"), which is a prerequisite to the ability to practice law in the State of Nebraska.  A portion of these mandatory dues, however, are used to fund political, ideological, and other non-germane activities ("non-chargeable activities") which Plaintiff Lautenbaugh and other class members do not support.  Defendants fail to provide constitutionally required procedural protections to safeguard Plaintiff's and other class members' constitutional rights.  Plaintiff therefore seeks declaratory and injunctive relief to abate and correct Defendants' unconstitutional actions.

## JURISDICTION AND VENUE

3.      Plaintiff Lautenbaugh and other class members bring this civil rights lawsuit pursuant to the First and Fourteenth Amendments to the United States Constitution.  Because this action arises under the Constitution and laws of the United States, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

4.      This is also an action under the Civil Rights Act of 1871, specifically 42 U.S.C. § 1983, to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to Plaintiff Lautenbaugh and other class members by the Constitution of the United States, particularly the First and Fourteenth Amendments thereto.  The jurisdiction of this Court, therefore, is also invoked under 28 U.S.C. § 1343(a)(3), (4).

5.      This is also a case of actual controversy because Plaintiff Lautenbaugh and other class members are seeking a declaration of their rights under the Constitution of the United States.  Under 28 U.S.C. §§ 2201 and 2202, this Court may declare the rights of Plaintiff Lautenbaugh and other class members and grant further necessary and proper relief, including preliminary and permanent injunctive relief, pursuant to Fed. R. Civ. P. 65.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because it is the judicial district where Defendants reside, and "in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. §§ 1391(b), 124(d)(1).

## PARTIES

7.      Plaintiff Lautenbaugh, is a citizen of the United States and a resident of Nebraska. Plaintiff Lautenbaugh is also a duly licensed attorney under the laws of Nebraska and, as required by Neb. Ct. R. § 3-803(A), is a member of the Nebraska State Bar Association ("NSBA"), which is a mandatory prerequisite to the ability to practice law in the State of Nebraska.

8.      As an active member of the state bar, Plaintiff Lautenbaugh has paid mandatory dues to the NSBA since he was admitted to practice law in 1991.

9.      Plaintiff Lautenbaugh is also a member of the Nebraska State Legislature, where he has served since 2007.  At various times during his tenure as a state Senator, Plaintiff Lautenbaugh has introduced bills, some of which the NSBA has formally opposed, some of which the NSBA has formally supported, and on some of which the NSBA has taken no position.

10.      Defendant NSBA is an association created by the Nebraska Supreme Court.  *In re Integration of Nebraska State Bar Association,* 275 N.W. 265, 271–73 (Neb. 1937).  Defendant NSBA is headquartered in Lincoln, Nebraska, and conducts its business and operations throughout the State of Nebraska.  Defendant NSBA is a "mandatory" or "integrated" bar

3

association as described in *Keller v. State Bar of California,* 496 U.S. 1, 5 (1990).  That is, all attorneys must join the NSBA and pay mandatory bar dues as a condition of practicing law in the State of Nebraska.  Defendant NSBA is currently enforcing the unconstitutional practices and policies complained of in this action.

11.     Defendant, Warren R. Whitted, Jr., is a resident of Omaha, Nebraska and is President of the NSBA.  In that capacity, Defendant Whitted conducts business on behalf of the NSBA throughout the State of Nebraska.  For example, Defendant Whitted has testified at legislative hearings; voted to take positions on legislation as a member of the NSBA Legislation Committee and Executive Committee, and defended the use of member dues to support the NSBA lobbying program.  *See* Warren R. Whitted Jr., *Making Sure Our Voice Is Heard,* THE NEBRASKA LAWYER (Mar./Apr. 2011); *see also, e.g., Act Relating to Schools and to Change Provisions Relating to Compulsory Attendance, Hearing on LB933 Before the Neb. Leg. Comm. on the Judiciary,* 102nd Leg., 2nd Sess. (Feb. 13, 2012).  Defendant Whitted is currently implementing and enforcing the unconstitutional practices and policies complained of in this action.  Defendant Whitted is sued in his official capacity.

12.     Defendant, Marsha E. Fangmeyer, is a resident of Kearney, Nebraska, and is the President-Elect of the NSBA.  In that capacity, Defendant Fangmeyer has voted to take positions on legislation as a member of the NSBA Legislation Committee and  Executive Committee. Defendant Fangmeyer is currently implementing and enforcing the unconstitutional practices and policies complained of in this action.  Defendant Fangmeyer is sued in her official capacity.

13.     Defendant, G. Michael Fenner, is a resident of Omaha, Nebraska, and is the President-Elect Designate of the NSBA.  In that capacity, Mr. Fenner has voted to take positions on legislation as a member of the NSBA Legislation Committee and Executive Committee.

4

Defendant Fenner is currently implementing and enforcing the unconstitutional practices and policies complained of in this action. Defendant Fenner is sued in his official capacity.

## CONSTITUTIONAL STANDARDS

14.    Under 42 U.S.C. § 1983, every person who, under color of state law, subjects any citizen of the United States to the deprivation of "rights, privileges, or immunities secured by the Constitution and laws," shall be liable to the injured party.

15.    The First Amendment protects not only the freedom to associate, but the freedom not to associate; and it protects not only the freedom of speech, but the freedom to avoid subsidizing group speech with which an individual disagrees. *Knox v. Service Employees Intern. Union,* 132 S. Ct. 2277, 2288–89 (2012); *Kingstad v. State Bar of Wisconsin,* 622 F.3d 708, 712–13 (7th Cir. 2010).

16.    Unless specific procedural protections are in place, an individual's rights against compelled speech and compelled association are violated when a mandatory bar uses mandatory member dues for purposes not germane to regulating the legal profession or improving the quality of legal services. *Keller,* 496 U.S. at 13–14; *Kingstad,* 622 F.3d at 712–13; *see also Knox,* 132 S. Ct. at 2295–96; *Abood v. Detroit Board of Education,* 431 U.S. 209, 235 (1977). The failure to provide such procedural protections in the first instance violates bar members' Fourteenth Amendment right to procedural due process. *Hudson v. Chicago Teachers Union Local No. 1,* 743 F.2d 1187, 1192–93 (7th Cir. 1984) *aff'd sub nom. Chicago Teachers Union, Local No. 1 v. Hudson,* 475 U.S. 292 (1986).

17.    Any activities that are not "germane" to the bar association's dual purposes of regulating the legal profession and improving the quality of legal services, including political and ideological activities, are "non-chargeable activities." *Keller,* 496 U.S. at 14; *see also Kingstad,* 622 F.3d at 718–19; *Romero v. Colegio de Abogados de Puerto Rico,* 204 F.3d 291, 302–03 (1st

Cir. 2000).

18.     When mandatory member dues are used for non-chargeable activities, the bar

association is required to establish procedures that satisfy three requirements:  (a) proper notice

to members, including an adequate explanation of the calculations of all non-chargeable

activities; (b) a reasonably prompt decision by an impartial decision maker once a member

makes an objection to the manner in which his or her mandatory member dues are being spent;

and (c) an escrow for the amounts reasonably in dispute while such challenges are pending.

*Keller,* 496 U.S. at 14; *Hudson,* 475 U.S. at 306–08.

19.     Defendants bear the burden of proving that expenditures are germane and

chargeable.  *Hudson,* 475 U.S. at 306; *see also Lehnert v. Ferris Faculty Ass'n,* 500 U.S. 507,

524 (1991) (emphasizing that, "as always, the union bears the burden of proving the proportion

of chargeable expenses to total expenses").

## CLASS ACTION ALLEGATIONS

20.     This is a class action brought by Plaintiff Lautenbaugh on his own behalf and on

behalf of others similarly situated, pursuant to Rule 23(b)(2) of the Federal Rules of Civil

Procedure.  The class that Plaintiff Lautenbaugh seeks to represent consists of all current NSBA

members who paid annual dues in 2012 and selected the "check-off" option on their annual dues

notices, or will select the "check-off" option on their 2013 dues notices, thus attempting to

exempt their dues from use for non-chargeable activities conducted by the NSBA.  It also

includes any NSBA members who have filed or will file a grievance pursuant to the NSBA's

defective grievance procedure, as described below.

21.     The number of persons in this class is approximately 1,100.  Paul Hammel,

*Mandatory Bar Membership For Lawyers Opposed,* OMAHA WORLD-HERALD (June 1, 2012).

The class is therefore so numerous that joinder of all members of the class is clearly impracticable. *See* Fed. R. Civ. P. 23(a)(1).

22.     There are questions of law and fact common to all members of the class; to wit, whether Defendants may constitutionally and lawfully collect mandatory bar dues without providing the procedural safeguards required by the First and Fourteenth Amendments to the United States Constitution. *See* Fed. R. Civ. P. 23(a)(2).

23.     Plaintiff Lautenbaugh's claims are typical of other members of the class, who have been subject to the same deprivations of their First and Fourteenth Amendment rights by the NSBA's collection and spending of their dues, without providing the necessary constitutional safeguards, as hereinafter alleged. *See* Fed. R. Civ. P. 23(a)(3).

24.     Plaintiff Lautenbaugh can adequately represent the interests of other members of the class. *See* Fed. R. Civ. P. 23(a)(4). Plaintiff Lautenbaugh has no interests antagonistic to other members of the class related to the subject matter of this lawsuit, since all members of the class are "potential objectors," *Hudson,* 475 U.S. at 306, and are entitled to notice and the procedures and safeguards required by the Constitution.

25.     Plaintiff Lautenbaugh's attorneys are experienced in representing litigants in federal court. These attorneys are provided *pro bono* by a national charitable legal foundation and are experienced in representing parties in constitutional rights litigation. Plaintiff Lautenbaugh's attorneys are therefore well qualified to serve as class counsel.

26.     Defendants have acted or refused to act on grounds generally applicable to the class. *See* Fed. R. Civ. P. 23(b)(2). Specifically, Defendants have failed to comply with the constitutional requirements for collecting mandatory member dues from Plaintiff Lautenbaugh and other class members. The declaratory and injunctive relief requested herein is therefore

7

appropriate with respect to the class as a whole.  *See id.*

## FACTUAL ALLEGATIONS

27.     The NSBA is a mandatory bar.  *In re Integration of Nebraska State Bar Association,* 275 N.W. at 269.  As such, it is unlawful for a person to practice law in the State of Nebraska unless such person is a member of the NSBA.  Neb. Ct. R. § 3-803(A).  The NSBA thus acts under color of state law to collect mandatory dues from NSBA members.  *Id.*; *Membership Dues Statement,* Nebraska State Bar Association (Nov. 15, 2011) (attached hereto as Exhibit 1).

28.     In addition to chargeable activities, which include providing continuing education for practicing lawyers and regulating the practice of law, the NSBA conducts extensive lobbying activities, which are wholly or partially funded by mandatory member dues.  *Legislative Program & Policy Statement,* Nebraska State Bar Association (adopted Oct. 23, 2008) (attached hereto as Exhibit 2).

29.     The NSBA has "a comprehensive and in-depth procedure for drafting, evaluating, and modifying proposed legislation at both [state and local] levels."  *Memorandum to Executive Council: Rationale for the Unified Bar in Nebraska,* Nebraska State Bar Association 4 (Mar. 2012) (*available online at* http://nebar.com/associations/8143/files/WhyIntegratedBar_2012.pdf) (last accessed Oct. 9, 2012).

30.     Over the past two years, the NSBA has expended mandatory bar dues on tracking almost 300 bills and taking positions on more than 100.  Many of the bills on which the NSBA took positions had nothing to do with regulating the legal profession or improving the quality of legal services.  Instead, many of the bills dealt with a wide range of unrelated issues, including concealed handguns, government contracts, divorce, grandparent visitation, child support, truancy, and criminal sentences.  *See NSBA Legislative Summary,* Nebraska State Bar

Association (Apr. 2012) (*available online at*

http://nebar.com/associations/8143/files/NSBA_FinalLegSummary_4-23-12_Subject.pdf) (last

accessed Oct. 9, 2012).  These bills included:

    a.    LB 12:  Eliminate "without parole" relating to life imprisonment (NSBA opposed);

    b.    LB 129:  Eliminate the statute of limitations for certain felonies (NSBA opposed);

    c.    LB 408:  Change provisions relating to divorce (*i.e.*, require marriage counseling, six month waiting period, etc.) (NSBA opposed);

    d.    LB 433:  Provide requirements for contracts for child welfare services between private agencies and the state (NSBA supported);

    e.    LB 516:  Authorize carrying of concealed handguns in educational institutions by certain personnel (NSBA opposed);

    f.    LB 612:  Increase the statute of limitations for plaintiffs suffering injury from sexual assault as a child (NSBA opposed);

    g.    LB 647:  Prohibit use of certain foreign laws in Nebraska courts (NSBA opposed);

    h.    LB 844:  Change child support and parenting time provisions (NSBA opposed);

    i.    LB 933:  Change provisions relating to truancy (NSBA supported);

    j.    LB 1086:  Provide additional grounds for grandparent visitation (NSBA opposed);

    k.    LB 1134:  Change agency procedures for eminent domain, making it more difficult for agencies to condemn private property (NSBA opposed); and

    l.    LB 1171:  Adopt the Nebraska Balance of Powers Act and create the Committee on Nullification of Federal Laws (NSBA opposed).

    31.    In addition to hiring outside lobbyists, the NSBA also uses mandatory member

dues to fund other non-chargeable activities, such as:  (a) sending NSBA staff members to

legislative hearings and legislative committee meetings; (b) holding receptions for Nebraska

9

state legislators; (c) drafting proposed legislation (*Memorandum to Executive Council* at 4); and (d) paying the administrative and overhead costs of legislation-related activities.  Letter from G. Michael Fenner, Professor of Law, Creighton University, to Jane Schoenike, Executive Director, NSBA 3 (Feb. 15, 2012) (attached hereto as Exhibit 3).

32.     Plaintiff Lautenbaugh supports some of the propositions the NSBA opposes, opposes some of the propositions the NSBA supports, and does not believe that his mandatory dues should be used for legislative lobbying or other non-chargeable activities, including those that conflict with his personal beliefs.

33.     Defendants have adopted two procedures in an attempt to protect the First and Fourteenth Amendment rights of NSBA members.  *Memorandum to Executive Council* at 4–5.

34.     The first of these procedures is a one-sentence "check-off" procedure ("Lobbying Check-Off") that is an option on annual dues notices.  It provides, "I do not want any portion of my dues used for lobbying purposes" next to a box, which members may check.  Exhibit 1; Neb. Ct. R. § 3-803(D)(2)(b).

35.     Defendants do not explain in the dues notice what portion of the NSBA's budget is used for "lobbying purposes."  The dues notice does provide a "tax notice" that states "[t]he nondeductible portion of your 2012 dues—the portion which is allocable to lobbying—is 5%." Exhibit 1.  However, the NSBA does not provide a basis upon which this percentage was purportedly calculated, nor does it provide a percentage of member dues that are allocated to non-chargeable activities besides "lobbying purposes."

36.     Nowhere in the member dues notice or other publications issued by the NSBA does the NSBA provide examples or a coherent definition of "lobbying purposes."

37.     For those members who utilize the Lobbying Check-Off procedure, the NSBA's purported policy is to "reallocate" the relevant percentage of those members' dues for other activities.  That is, these monies will be "budgeted by the Executive Council" for other activities, which may or may not be non-chargeable activities.  *See* Neb. Ct. R. § 3-803(D)(2)(b).

38.     Specifically, although Neb. Ct. R. § 3-803(D)(2)(b) directs that the lobbying fund shall be reduced in proportion to a dissenter's contribution, materials released by the NSBA in an attempt to defend its practices and policies allow only that, if an NSBA member utilizes the Lobbying Check-Off procedure, "the NSBA segregates and then deducts from legislative counsel's contract, the amount that is determined by the number of NSBA members that 'check off.'"  *Memorandum to Executive Council* at 4; Neb. Ct. R. § 3-803(D)(2)(b).  In other words, utilization of the Lobbying Check-Off procedure only exempts member dues from being used to pay the NSBA's outside lobbyists.  Exhibit 3; *Memorandum to Executive Council* at 4.

39.     As a result, Plaintiff Lautenbaugh and other class members are given no assurances that, even if they check the Lobbying Check-Off box, their mandatory member dues will not go to other non-chargeable activities that the NSBA does not categorize as "lobbying purposes" conducted by its outside lobbyists, such as legislative or lobbying activities conducted by NSBA staff members.

40.     Plaintiff Lautenbaugh and approximately 1,100 proposed class members, utilize the Lobbying Check-Off procedure each year (out of the approximately 9,300 attorneys practicing in Nebraska).  Paul Hammel, *Mandatory Bar Membership for Lawyers Opposed,* OMAHA WORLD-HERALD (June 1, 2012).

41.     NSBA members not utilizing the Lobbying Check-Off procedure have access to a "Member Dues Grievance Procedure" ("Grievance Procedure").  *Member Dues Grievance*

11

*Procedure,* Nebraska State Bar Association (attached hereto as Exhibit 4).  The Grievance

Procedure seeks to provide NSBA members with a means to "challenge[] a particular

expenditure."  *Memorandum to Executive Council* at 5.  Yet, the NSBA's own Executive

Committee makes the "final determination regarding the grievance."  Exhibit 4.  This may

explain why only one grievance has ever been filed.  *Memorandum to Executive Council* at 5.

42.     NSBA members who have utilized the Lobbying Check-Off procedure may not

file a grievance.  Exhibit 4.

43.     Except Nebraska, every state with a mandatory bar association that engages in

non-chargeable activities provides for reimbursement or an advance reduction of the portion of

member dues used for non-chargeable activities (most with interest).

44.     The annual dues notice sent out by the NSBA does not seek the affirmative

consent of bar members to use compulsory dues for political, ideological, and other non-

chargeable activities.  *See* Exhibit 1.

45.     On February 29, 2012, Plaintiff Lautenbaugh filed a petition with the Nebraska

Supreme Court captioned *Petition for a Rule Change to Create a Voluntary State Bar in*

*Nebraska: to Abolish Neb. Ct. R.. Chapter 3, Article 8, and to Make Whatever Other Rule*

*Changes are Necessary to Transition from a Mandatory to a Voluntary State Bar Association.*

46.     On March 21, 2012, the Nebraska Supreme Court ordered publication of a

petition for public comment by interested parties.  *See Comment Sought on S-36-120001*

*"Petition for a Rule Change to Create a Voluntary State Bar of Nebraska ....",* Nebraska

Supreme Court (April 2012) (*available online at*

http://www.supremecourt.ne.gov/community/adminmemos/2012/12-4.shtml) (last accessed Sept.

27, 2012).

47.     On September 21, 2012, the Nebraska Supreme Court ordered the NSBA to file a report providing "a detailed inventory of *all* programs, services, and activities of the NSBA and an accounting of funds" and addressing "certain questions of law arising out of this petition," including questions regarding whether the NSBA's procedures are constitutional.  Order at 3, *In Re Petition for Rule Change to Create Voluntary State Bar of Nebraska, etc.,* No. S-36-120001 (Neb., Sep. 21, 2012) (emphasis in original).

48.     Because the Nebraska Supreme Court is still gathering information about Defendants' practices and policies, it has not taken final action on Plaintiff Lautenbaugh's petition.

### FIRST CLAIM FOR RELIEF
**(Compelled Speech and Association)**
**(First and Fourteenth Amendments)**

49.     Plaintiff Lautenbaugh and class members reallege and incorporate by reference each and every allegation set forth above.

50.     Under color of state law, Defendants have collected and continue to collect mandatory member dues from Plaintiff Lautenbaugh and other class members, which are used in part for political, ideological, and other non-chargeable activities contrary to their views.

51.     Without being provided with an immediate rebate of, or advance reduction in, the amount of dues being spent on non-chargeable activities, and without being provided an opportunity to opt in to non-chargeable activities, Plaintiff Lautenbaugh and other class members are being forced to associate with and subsidize the NSBA's political speech, lobbying efforts, and other non-chargeable activities; and are otherwise deprived of their rights to free speech and free association under the First Amendment.

52.     Once Plaintiff Lautenbaugh's dues, and those of other class members, are utilized for non-chargeable activities, their First and Fourteenth Amendment rights are irretrievably infringed and "even a full refund [will] not undo the violation of [their] First Amendment rights." *Knox,* 132 S. Ct. at 2292–93.

53.     Accordingly, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law that deprive Plaintiff Lautenbaugh and other class members of rights, privileges and/or immunities secured by the First and Fourteenth Amendments, and, therefore, Defendants are liable to Plaintiff Lautenbaugh and other class members under 42 U.S.C. § 1983.

54.     Plaintiff Lautenbaugh and other class members have no adequate legal remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights.

55.     Plaintiff Lautenbaugh and other class members are therefore entitled to declaratory and permanent injunctive relief.  28 U.S.C. §§ 2201, 2202.

## SECOND CLAIM FOR RELIEF
**(Lobbying Check-Off and Grievance Procedures)**
**(First and Fourteenth Amendments)**

56.     Plaintiff Lautenbaugh and other class members reallege and incorporate by reference each and every allegation set forth above.

57.     The First and Fourteenth Amendments protect the right of an objecting bar association member to decline to subsidize activities that are not germane to a mandatory bar association's dual purposes of regulating the legal profession and improving the quality of legal services.  *Keller,* 496 U.S. at 13; *Kingstad,* 622 F.3d at 712–14.

58.     Therefore, the First and Fourteenth Amendments require that procedures for the collection of compulsory member dues be narrowly tailored to allow members to object to non-

chargeable expenditures, in order to protect their fundamental rights to freedom of speech and association. *Hudson,* 475 U.S. at 303.

59.    Under color of state law, Defendants have collected and continue to collect mandatory member dues, which are used in part to fund non-chargeable activities, without first providing the narrowly tailored procedures required by the First and Fourteenth Amendments.

60.    The non-chargeable activities undertaken by the Defendants include lobbying activities and other uses of mandatory member dues that fall outside a bar association's dual purposes of regulating the legal profession and improving the quality of legal services. *Keller,* 496 U.S. at 14.

61.    Defendants' Lobbying Check-Off procedure fails to protect the First and Fourteenth Amendment rights of Plaintiff and other class members. *See* Ralph A. Brock, "*An Aliquot Portion of Their Dues": A Survey of Unified Bar Compliance with Hudson and Keller*, 1 TEX. TECH. J. TEX. ADMIN. L. 23, 69 (2000) (concluding that the NSBA's Lobbying Check-Off procedure fails to comply with *Keller* and *Hudson*).

62.    The Supreme Court has held that procedures for the collection of compulsory member dues must provide the following safeguards, commonly referred to as "*Hudson* requirements":  (a) an adequate explanation of non-chargeable activities; (b) a grievance procedure that will provide a reasonably prompt decision by an impartial decision-maker; and (c) a provision for any disputed amounts to be held in an escrow account while challenges are pending. *Hudson,* 475 U.S. at 306–10.

63.    Defendants violate the first *Hudson* requirement by failing to provide NSBA members with an adequate explanation of non-chargeable activities, including "the major

categories of expenses, as well as verification by an independent auditor" so that bar members may "gauge the propriety" of the charges. *Id.* at 306, 307 n.18.

64.     The Lobbying Check-Off procedure fails to provide bar members with adequate notice of the basis of the NSBA's calculation of "lobbying purposes," fails to provide an adequate explanation of the NSBA's definition of "lobbying purposes," and fails to provide verification by an independent auditor, thereby violating the first *Hudson* requirement and the First and Fourteenth Amendment rights of Plaintiff Lautenbaugh and other class members. *Id.* at 306–308.

65.     Defendants violate the second *Hudson* requirement by failing to establish a grievance procedure that will provide a "reasonably prompt decision by an impartial decisionmaker." *Id.* at 308.  Although Defendants' Grievance Procedure claims to provide members with a means to file a claim, the procedure completely fails to provide the information on which such a claim might be based in the first place (Exhibit 4), thereby violating the second *Hudson* requirement and the First and Fourteenth Amendment rights of Plaintiff Lautenbaugh and other class members.  *Hudson*, 475 U.S. at 306–308.

66.     Moreover, a grievance procedure controlled by the association that stands to benefit from receipt of member dues—and is thus an "interested party"—does not satisfy the impartial-decision maker requirement.  *Id.* at 306–308.

67.     By giving the NSBA's own Executive Council the final say over any grievances (Exhibit 4), the Grievance Procedure fails to provide an impartial decision-maker, thereby violating the second *Hudson* requirement and the First and Fourteenth Amendment rights of Plaintiff and other class members.  *Hudson*, 475 U.S. at 306–308.

68.   Additionally, Defendants have written the Grievance Procedure in such a way as to explicitly bar NSBA members who utilize the Lobbying Check-Off procedure from utilizing the Grievance Procedure.  Exhibit 4.

69.   Defendants violate the third *Hudson* requirement by failing to hold any disputed amounts of bar members' dues in an escrow account while challenges are pending.  Neb. Ct. R. § 3-803(D)(2)(b); *Hudson*, 375 U.S. at 310.

70.   The Lobbying Check-Off procedure fails to provide adequate remedies to objecting bar members because it reallocates member dues, rather than providing a refund or advance reduction of dues.  Neb. Ct. R. § 3-803(D)(2)(b); *Hudson,* 475 U.S. at 310; *see Ellis v. Railway Clerks,* 466 U.S. 435, 444 (1984) (constitutionally permissible options include advance reduction of dues and/or interest-bearing escrow accounts).

71.   Reallocation improperly allows Defendants to use NSBA member dues for non-chargeable activities.  While the NSBA allegedly reduces the amount of its contracts with outside lobbyists in proportion to the number of NSBA members who select the Lobbying Check-Off option, the NSBA does not reduce the amounts budgeted for NSBA internal lobbying or other non-chargeable activities in proportion to the number of members who select the Lobbying Check-Off procedure.  *Memorandum to Executive Council* at 4; Neb. S. Ct. R. § 3-803(D)(2)(b); *see Tierney v. City of Toledo,* 824 F.2d 1497, 1506 (6th Cir. 1987) (rejecting the union's practice of refunding only that portion of union dues expended for "*ideological* purposes" because, under *Hudson,* the union is required to refund that portion of union dues used for *all* non-chargeable activities) (emphasis in original).

72.   As a result, the NSBA not only fails to refund or reimburse the portion of Plaintiff Lautenbaugh's and other class members' dues that are used for non-chargeable activities, but

selection of the Lobbying Check-Off also does not operate to exempt member dues from all non-chargeable activities conducted by the NSBA. Therefore, the Lobbying Check-Off procedure violates the third *Hudson* requirement and the First and Fourteenth Amendment rights of Plaintiff Lautenbaugh and other class members. *Hudson,* 475 U.S. at 310.

73.     Accordingly, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law that deprive Plaintiff Lautenbaugh and other class members of rights, privileges and/or immunities secured by the First and Fourteenth Amendments, and, therefore, Defendants are liable to Plaintiff Lautenbaugh and other class members under 42 U.S.C. § 1983.

74.     Plaintiff Lautenbaugh and other class members have no adequate legal remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights.

75.     Plaintiff Lautenbaugh and other class members are therefore entitled to declaratory and permanent injunctive relief. 28 U.S.C. §§ 2201, 2202.

### THIRD CLAIM FOR RELIEF
**(Right to Affirmatively Consent)**
**(First and Fourteenth Amendments)**

76.     Plaintiff Lautenbaugh and other class members reallege and incorporate by reference each and every allegation set forth above.

77.     The First Amendment requires Defendants to give class members, including Plaintiff Lautenbaugh, the opportunity to affirmatively consent to the use of their dues for non-chargeable activities. *See Knox,* 132 S. Ct. at 2290–91.

78.     Requiring objecting dues-payers to opt out of paying the non-chargeable portion of dues provides a "remarkable boon" to the association collecting dues, and dues-payers' "acquiescence in the loss of fundamental rights" should not be presumed. *Id.* at 2290.

18

79.     The NSBA's opt-out procedure fails to carefully protect the First Amendment rights at stake and "creates a risk" that mandatory dues paid by bar members "will be used to further political and ideological activities" with which those bar members do not agree.  *Id.*

80.     Defendants' Lobbying Check-Off procedure requires Plaintiff Lautenbaugh and other class members to affirmatively *dissent* from use of their member dues for "lobbying purposes" and thus falls short of the narrow tailoring necessary to prevent the infringement of the free speech rights of Plaintiff Lautenbaugh and other class members.  *Id.* at 2291.

81.     Accordingly, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law that deprive Plaintiff Lautenbaugh and other class members of rights, privileges and/or immunities secured by the First and Fourteenth Amendments, and, therefore, Defendants are liable to Plaintiff Lautenbaugh and other class members under 42 U.S.C. § 1983.

82.     Plaintiff Lautenbaugh and other class members have no adequate legal remedy by which to prevent or minimize the continuing irreparable harm to his constitutional rights.

83.     Plaintiff Lautenbaugh and other class members are therefore entitled to declaratory and permanent injunctive relief.  28 U.S.C. §§ 2201, 2202.

**FOURTH CLAIM FOR RELIEF**
**(Procedural Due Process)**
**(Fourteenth Amendment)**

84.     Plaintiff Lautenbaugh and other class members reallege and incorporate by reference each and every allegation set forth above.

85.     The Fourteenth Amendment requires Defendants to provide constitutionally adequate procedures in order to protect class members' rights to procedural due process.  "Even in the absence of First Amendment interests, minimum procedural safeguards under the due

19

process clause include timely and adequate notice detailing the reasons for a proposed

deprivation of property." *Lowary v. Lexington Local Bd. of Educ.,* 903 F.2d 422, 429 (6th Cir.

1990) (internal citations omitted).

86.     In the absence of constitutionally adequate procedures, collection of any amount

of dues from Plaintiff Lautenbaugh and other class members violates their Fourteenth

Amendment due process rights, regardless of whether Defendants have used any portion of their

dues for non-chargeable activities.  *Hudson,* 743 F.2d at 1192–93 (holding that, even if no

improper expenditures were made, fair procedures are required, apart from any procedural

safeguards required by the First Amendment); *see also Tierney,* 824 F.2d at 1504 (holding that

"no union or employer may take any action [to collect compulsory dues] . . . until a plan with

procedures meeting the commands of *Abood* and *Hudson* is established and operating").

87.     Defendants' Lobbying Check-Off and Grievance Procedures are constitutionally

inadequate under the mandates of *Hudson* and *Knox*.  Therefore, Plaintiff Lautenbaugh and other

class members have been deprived of their right to procedural due process under the Fourteenth

Amendment.

88.     Accordingly, Defendants currently maintain and actively enforce a set of laws,

customs, practices, and policies under color of state law that deprive Plaintiff Lautenbaugh and

other class members of rights, privileges and/or immunities secured by the Fourteenth

Amendment, and, therefore, Defendants are liable to Plaintiff Lautenbaugh and other class

members under 42 U.S.C. § 1983.

89.     Plaintiff and other class members have no adequate legal remedy by which to

prevent or minimize the continuing irreparable harm to their constitutional rights.

90.     Plaintiff Lautenbaugh and other class members are therefore entitled to declaratory and permanent injunctive relief.  28 U.S.C. §§ 2201, 2202.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Scott Lautenbaugh, on behalf of himself and the class he seeks to represent, respectfully requests the following relief:

1.     Entry of judgment declaring that Plaintiff Lautenbaugh and other class members have First Amendment rights against compelled speech and compelled association, and therefore have a constitutional right to prevent Defendants from using their member dues on non-chargeable activities;

2.     Entry of judgment declaring that Defendants' Lobbying Check-Off and Grievance Procedures are unconstitutional, and that using mandatory dues for non-chargeable activities while maintaining such policies deprives Plaintiff Lautenbaugh and other class members of rights, privileges, and/or immunities secured to them by the First and Fourteenth Amendments, and, therefore, Defendants are liable to Plaintiff Lautenbaugh and other class members under 42 U.S.C. § 1983;

3.     Entry of judgment declaring that Defendants' practice of using an opt-out procedure for funding non-chargeable activities is unconstitutional, and using mandatory dues for non-chargeable activities while maintaining an opt-out procedure rather than an opt-in procedure deprives Plaintiff Lautenbaugh and other class members of rights, privileges, and/or immunities secured to them by the First and Fourteenth Amendments, and, therefore, Defendants are liable to Plaintiff and other class members under 42 U.S.C. § 1983;

4.     Entry of judgment declaring that Defendants' Lobbying Check-Off and Grievance Procedures fail to comply with *Hudson* and thus deprive Plaintiff Lautenbaugh and other class

21

members of their Fourteenth Amendment right to procedural due process, and, therefore, Defendants are liable to Plaintiff Lautenbaugh and other class members under 42 U.S.C. § 1983;

5.      Entry of preliminary and permanent injunctions against Defendants prohibiting the collection of mandatory member dues from Plaintiff Lautenbaugh and other class members unless and until procedures that properly safeguard the First and Fourteenth Amendment rights of Plaintiff Lautenbaugh and other class members are adopted;

6.      Award Plaintiff Lautenbaugh and other class members their costs, expenses, and attorneys' fees in accordance with law, including 42 U.S.C. § 1988; and

7.      Award Plaintiff Lautenbaugh and other class members such further relief as is just and equitable.

DATED this 10th day of October 2012.

Respectfully submitted,

s/ Steven J. Lechner
Steven J. Lechner, Esq.
James M. Manley, Esq.[1]
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
Phone:  (303) 292-2021
Fax:  (303) 292-1980
lechner@mountainstateslegal.com
jmanley@mountainstateslegal.com

Attorneys for Plaintiffs

---

[1] Application for admission to the U.S. District Court for the District of Nebraska pending.

22