# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SCOTT LAUTENBAUGH, on behalf of himself and the class he seeks to represent,<br><br>        Plaintiff,<br><br> v.<br><br>NEBRASKA STATE BAR ASSOCIATION, *et. al.*,<br><br>        Defendants. | Case No. 4:12-cv-03214-RGK<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................................ii

INTRODUCTION ................................................................................................................................ 1

LEGAL ARGUMENT AND AUTHORITY ........................................................................................ 3

I. Plaintiff's Case is Moot Because the NSBA's Contested Legislative Program and Funding Mechanisms No Longer Exist. ............................................................................................. 3

    A. No Live Controversy Exists Once an Offending System is Amended to Conform with the Law. ....................................................................................................... 3

    B. Plaintiff's Manufactured Dues Dispute Does Not Save His Claim. .................................. 5

II. Plaintiff's Accusations Regarding the NSBA's Conduct During Settlement Negotiations are Inadmissible and Wholly Unsupported. ............................................................................. 6

    A. Evidence Regarding the Parties' Settlement Negotiations is Inadmissible. ..................... 6

    B. Plaintiff's Accusations Regarding Defendants' Motives and Conduct are Irresponsible, Unsupported and Misleading. .................................................................... 7

CONCLUSION ................................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Citizens for Responsible Gov't State Political Action Comm. v. Davidson*,
   236 F.3d 1174 (10th Cir. 2000) ................................................................................ 3, 5, 10

*Eid v. Saint-Gobain Abrasives, Inc.*,
   2010 Westlaw 1923876 (6th Cir. 2010) ................................................................................ 6

*Morrison v. Bd. of Educ. of Boyd County*,
   521 F.3d 602 (6th Cir. 2008) ............................................................................................. 2, 6

*Phelps-Roper v. City of Manchester, Missouri*,
   697 F.3d 678 (8th Cir. 2012) ............................................................................................. 3, 5

*Spencer v. Kemna*,
   523 U.S. 1 (1998) ..................................................................................................................... 1

*Teague v. Cooper*,
   720 F.3d 973 (8th Cir. 2013) ................................................................................................... 3

*Trebor Sportswear co. v. The Limited Stores, Inc.*,
   865 F.2d 506 (2nd Cir. 1989) .................................................................................................. 7

*Utah Animal Rights Coalition v. Salt Lake City Corp.*,
   371 F.3d 1248 (10th Cir. 2004) (McConnell, J., concurring) ......................................... *passim*

*Vulcan Hart Corp. v. NLRB*,
   718 F.2d 269 (8th Cir. 1983) ................................................................................................... 7

*Weems v. Tyson*,
   665 F.3d 958 (8th Cir. 2011) ................................................................................................... 7

**Other Authorities**

Federal Rule of Evidence 408 ................................................................................................... 6, 7

Federal Rule of Evidence 408(a) .................................................................................................. 6

Neb. Ct. R. § 3-802(A) .................................................................................................................. 4

Neb. Ct. R. § 3-803(A)(1) ............................................................................................................. 9

Neb. Ct. R. § 3-803(D) ............................................................................................................. 4, 9

Neb. Ct. R. § 3-803(D)(2) ............................................................................................................. 4

Neb. Ct. R. § 3-803(E) .............................................................................................................. 6, 9

Neb. Ct. R. § 3-803(J) .................................................................................................................. 4

Rule 408's .................................................................................................................................... 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| SCOTT LAUTENBAUGH, on behalf of himself and the class he seeks to represent, | ) ) ) ) | Case No. 4:12-cv-03214-RGK |
| Plaintiff, | ) ) | **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |
| v. | ) ) ) | |
| NEBRASKA STATE BAR ASSOCIATION, *et. al.*, | ) ) ) | |
| Defendants. | ) | |

# INTRODUCTION

Federal courts "are not debating societies to determine whether past actions and defunct ordinances were constitutional . . . It is not enough that a plaintiff wishes to have the moral satisfaction of a judicial ruling that he was right and his adversary was wrong; the relief sought must have legal effect in determining the present and future rights and obligations of the parties." *Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1262-1264 (10th Cir. 2004) (McConnell, J., concurring). Simply put, the courts are "not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998).

Plaintiff Scott Lautenbaugh ("Plaintiff") ignores this well-settled principle and insists that a live controversy remains before the Court. Yet there is no dispute that the Nebraska Supreme Court invalidated how the Nebraska State Bar Association's ("NSBA") former legislative program functioned. There is no dispute that the funding mechanisms challenged by Plaintiff— including the use of mandatory member dues for legislative activities—were also abolished. There is no dispute that constitutionally sound procedures and rules are now in place. And there

1

is no dispute that this Court cannot grant any injunctive, declaratory or prospective relief that would "determin[e] the present and future rights and obligations of the parties." *Utah*, 371 F.3d at 1264. This case is now moot.

The dues dispute manufactured by Plaintiff is a red-herring. Although a claim for damages can sometimes defeat mootness, Plaintiff did not request any damages in his Complaint. Rather, his 2013 dues were placed in escrow pending the outcome of this litigation. Now that this case is moot, Plaintiff's dues should simply be released to him. Whether he pays those dues is an issue between him and the Nebraska Supreme Court. The NSBA submits that Nebraska's highest court has already spoken on this issue, by invalidating the Association's dues and legislative programs without granting retrospective relief to members. In any event, neither this Court nor the NSBA is empowered to decide whether Plaintiff is in good standing with the state bar. That power belongs exclusively to the Nebraska Supreme Court.

This reality is what prevented the NSBA from unilaterally excusing Plaintiff from paying his 2013 dues—not, as Plaintiff insinuates, misguided intimidation tactics. Plaintiff's accusation that Defendant Fenner's affidavit is not based on personal knowledge is completely unfounded and misrepresents the record. Equally ill-considered is Plaintiff's suggestion that the NSBA wanted a secret settlement agreement to avoid negative publicity. What the NSBA wanted was to avoid wasting time and resources fighting over obsolete programs and *de minimis* amounts. The Association's position is perhaps best summarized by the Sixth Circuit Court of Appeals: "This case should be over. Allowing it to proceed to determine the constitutionality of an abandoned policy—in the hope of awarding the plaintiff a single dollar—vindicates no interest and trivializes the important business of the federal courts." *Morrison v. Bd. of Educ. of Boyd County*, 521 F.3d 602, 611 (6th Cir. 2008).

For these reasons, as well as the reasons stated in Defendants' previously filed summary judgment briefs hereby incorporated, summary judgment should be granted.

## LEGAL ARGUMENT AND AUTHORITY

I. **Plaintiff's Case is Moot Because the NSBA's Contested Legislative Program and Funding Mechanisms No Longer Exist.**

   A. **No Live Controversy Exists Once an Offending System is Amended to Conform with the Law.**

"[P]ast exposure to alleged illegal conduct does not establish a present live controversy if unaccompanied by any continuing present effect." *Utah*, 371 F.3d at 1263 (McConnell, J. concurring). "The crucial question is whether granting a present determination of the issues offered . . . will have some effect in the real world." *Id.* at 1256 (internal quotations omitted). "When a law has been amended or repealed, actions seeking declaratory or injunctive relief for earlier versions are generally moot . . . ." *Phelps-Roper v. City of Manchester, Missouri*, 697 F.3d 678, 687 (8th Cir. 2012). *See also Teague v. Cooper*, 720 F.3d 973, 976 (8th Cir. 2013); *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000). Particularly relevant here, a plaintiff has "no legally cognizable interest in the constitutionality of an obsolete statute," and such challenges "are clearly moot." *Citizens for Responsible Gov't*, 236 F.3d at 1182.

Not surprisingly, Plaintiff's opposition brief glosses over the substance of the Nebraska Supreme Court's ruling, focusing instead on "the constitutionality of . . . obsolete" legislative and funding programs. *Id.* But it is clear from its Order that the Nebraska Supreme Court fully intended to dispose of the very issues presented here. From the way the Court framed the question presented—

> It is that 'difficult question' of the use of mandatory bar dues for 'germane' versus 'nongermane' activities which . . . forms the basis for the challenge to Nebraska's mandatory bar which is before us today. (In re: Pet. for a Rule Change to Create a

3

> Voluntary State Bar of Neb.: To Abolish Neb. Ct. R. Chapter 3, Art. 8, and to
> Make Whatever Other Rule Changes Are Necessary to Transition from a
> Mandatory to a Voluntary State Bar Ass'n ("Pet."), 286 Neb. 1018, 1020 (2013)),

to its analysis of the opposing arguments—

> The proponents and opponents of the mandatory bar disagree on the relevance of
> germaneness under *Keller* and *Kingstad*. The Bar Association contends that
> *Keller* and its progeny require only that objecting members not be required to pay
> for nongermane political and ideological lobbying. Contrarily, an opponent of the
> mandatory bar argues that under *Kingstad*, it is no longer enough that an objecting
> member's mandatory dues not be used for ideological and political activities by
> the Bar Association; rather, the mandatory dues must be used only for germane
> purposes, regardless of the nature of the activity (*Id.* at 1032),

to its final resolution—

> By limiting the use of mandatory assessments to the arena of regulation of the
> legal profession, we ensure that the Bar Association remains well within the limits
> of the compelled-speech jurisprudence of the U.S. Supreme Court and avoid
> embroiling this court and the legal profession in unending quarrels and litigation
> over the germaneness of an activity in whole or in part, the constitutional
> adequacy of a particular opt-in or opt-out system, or the appropriateness of a
> given grievance procedure (*Id*. at 1035-1036),

Nebraska's Supreme Court obviously faced the exact issues presented here and resolved those issues by invalidating the NSBA's existing legislative and funding systems.

Moreover, the Nebraska Supreme Court promptly amended its Rules to implement the holding. Most relevant here, the Court revised its statement of "Purpose and Authority," Neb. Ct. R. § 3-802(A), enacted an entirely new "Mandatory Membership Assessment" structure to replace its old dues system, Neb. Ct. R. § 3-803(D), deleted the former rule governing "Lobbying and Related Activities," former Neb. Ct. R. § 3-803(D)(2), and enacted a new rule mandating that only voluntary dues be used to "analyze and disseminate to its members information on proposed or pending legislative proposals and any other nonregulatory activity intended to improve the quality of legal services to the public and promote the purposes of the Association as set forth in § 3-802," Neb. Ct. R. § 3-803(J).

4

In short, the Nebraska Supreme Court eliminated the programs that Plaintiff objected to and replaced them with constitutionally sound alternatives. Plaintiff has "no legally cognizable interest in the constitutionality of an obsolete statute." *Citizens for Responsible Gov't*, 236 F.3d at 1182. The Court should apply the settled principle that "[w]hen a law has been amended or repealed, actions seeking declaratory or injunctive relief for earlier versions are generally moot," *Phelps-Roper*, 697 F.3d at 687, because no judgment of this Court "will have [an] effect in the real world," *Utah*, 371 F.3d at 1256. Plaintiff's case is moot.

**B.     Plaintiff's Manufactured Dues Dispute Does Not Save His Claim.**

Plaintiff concedes, as he must, that the Nebraska Supreme Court's Order moots his request for prospective injunctive and declaratory relief regarding the NSBA's former legislative and funding programs. (*See, e.g.,* Doc. 68, Pl's. Resp./Reply to Defs.' Resp. & Cross-Mot. for Summ. J. ("Pl's. Resp.") at p. 2.) Nevertheless, Plaintiff fights to keep his claim alive by asserting the unsettled disposition of his 2013 dues entitles him to injunctive and/or declaratory relief. *Id*. This is incorrect.

Contrary to Plaintiff's contention, the NSBA does not "ignore[] the basis on which Mr. Lautenbaugh's dues were deposited into his trust account." *Id*. The NSBA agrees that Plaintiff "placed his dues in his trust account in lieu of a preliminary injunction hearing, on the suggestion of the Court." *Id*. The Association further agrees that until approved "constitutional procedures were in place and operating," Plaintiff's dues would remain in the account. *Id*. Where the NSBA disagrees with Plaintiff is that the disposition of these dues is a live controversy. There is no dispute that after the Nebraska Supreme Court's Order and Rule amendments, "constitutional procedures [are] in place and operating." *Id*. Accordingly, the Court should release Plaintiff's $275 back to him. Nothing more is required.

5

Whether Plaintiff wishes to contest his 2013 dues is a matter between him and the Nebraska Supreme Court. The Supreme Court Rules provide Plaintiff with a mechanism for such a contest—he can refuse to pay his dues and then make his argument to the Court at a mandatory hearing. *See* Neb. Ct. R. § 3-803(E). This would allow the court constitutionally empowered to regulate the state bar to decide whether Plaintiff must remit all or a portion of his dues.[1] Whatever the outcome, the disposition of Plaintiff's dues does not generate a live controversy about obsolete programs, particularly considering that neither the NSBA nor the individual Defendants have any control over Plaintiff's standing with the bar. "The course of federal litigation often involves a winnowing of issues. Where, as here, the process of separating wheat from chaff results in a threshing floor bare of justiciable claims, the case is over." *Morrison*, 521 F.3d at 607-608. This case is over.

## II. Plaintiff's Accusations Regarding the NSBA's Conduct During Settlement Negotiations are Inadmissible and Wholly Unsupported.

### A. Evidence Regarding the Parties' Settlement Negotiations is Inadmissible.

Plaintiff tries to evade black letter law through unsupported insinuations about the NSBA's motivations and settlement tactics. (Doc. 68, Pl's. Resp. at pp. 2-6.) Before turning to why such accusations are ill-founded, however, the threshold issue of admissibility must be addressed. Federal Rule of Evidence 408 states that evidence regarding settlement negotiations is inadmissible "to impeach by a prior inconsistent statement or a contradiction . . . ." FED. R. EVID. 408(a) (2014). *See also Eid v. Saint-Gobain Abrasives, Inc.*, 2010 Westlaw 1923876 at *6 (6th Cir. 2010) ("The plain text of Rule 408 precludes the use of settlement communications 'to

---

[1] The NSBA submits the Nebraska Supreme Court has already spoken on this issue. There is no indication that the Court intended its Order or Rule amendments to apply retroactively and Plaintiff provides no evidence to the contrary. This is particularly notable considering the Nebraska Supreme Court specifically "recognize[d] that as of the date of issuance of this opinion, the billing statements for bar dues for 2014 have been distributed," and articulated a dues structure for 2014 that included a "refund of any amounts previously paid for the member for the 2014 calendar year in excess of the mandatory membership assessments" if the member declined to pay voluntary dues. (Pet., 286 Neb. at 1038-1039.) No such refund was ordered for 2013 or any other year.

impeach through prior inconsistent statement or contradiction.'") That is precisely what Plaintiff attempts here. He wishes to impeach Defendant Fenner's affidavit by introducing evidence of defense counsel's prior settlement communications. This is clearly impermissible under Rule 408.

Plaintiff's reliance on *Weems v. Tyson*, 665 F.3d 958 (8th Cir. 2011), is misplaced. Simply put, that case has nothing to do with the impeachment language contained in Rule 408. Consequently, *Weems* cannot help Plaintiff overcome Rule 408's clear prohibition against using settlement communications for impeachment purposes. Plaintiff's citations to *Trebor Sportswear co. v. The Limited Stores, Inc.*, 865 F.2d 506 (2nd Cir. 1989), and *Vulcan Hart Corp. v. NLRB*, 718 F.2d 269 (8th Cir. 1983), are similarly unhelpful because those cases were decided before 2006, the year in which Rule 408 was amended to prohibit using settlement evidence for impeachment purposes. *See* FED. R. EVID. 408 advisory committee note (2006).

In summary, Plaintiff provides no explanation for why the Court should disregard the clear language of Rule 408. His claim that "the NSBA has put its settlement offers to [Plaintiff] in dispute," is both unsupported by any specific evidence and trumped by the operation of Rule 408. (Doc. 68, Pl's. Resp. at p. 4, n.3.) Accordingly, any discussion of Defendants' settlement communications, and the communications themselves, should be disregarded by the Court.

    **B.    Plaintiff's Accusations Regarding Defendants' Motives and Conduct are Irresponsible, Unsupported and Misleading.**

Even if the Court is inclined to consider the settlement evidence proffered by Plaintiff, that does not change the outcome of this case because his allegations are ill-founded. As his opening salvo, Plaintiff boldly asserts that "Mr. Fenner had no personal knowledge of the offer made by his attorneys to Mr. Lautenbaugh," accuses him of a "misrepresentation" and then claims the Court should disregard his affidavit—all without citation to record evidence or legal

7

authority. (*Id*. at p. 4.) His lone attempt to prop up these accusations is a reference to Ms. Cannan's declaration, in which she explains her request that the NSBA not collect Plaintiff's 2013 dues (a request the NSBA is not empowered to accept, *see infra*). *Id.*

What Ms. Cannan's declaration does <u>not</u> provide, and could not provide, is any explanation of how, exactly, Plaintiff knows that Defendant Fenner "had no personal knowledge of the offers made by his attorneys . . . ." *Id.* Any discussions between Defendants and their attorneys regarding settlement were attorney-client privileged and certainly not shared with Plaintiff or his attorneys. The fact Defendant Fenner did not participate on phone calls or e-mail exchanges between counsel proves nothing. (*See* Doc. 72-1, Decl. of Cannan at ¶¶ 6, 9 & 12.) Settlement discussions are frequently conducted between counsel without their clients' direct participation. Presumably, Plaintiff's counsel is aware of this reality considering that she did not copy Plaintiff on her response to Defendants' final settlement overture. (2/21/14 E-mail Cannon to Hatch.)[2] To accuse Defendants of submitting an improper affidavit without <u>any</u> evidence to support such a contention is the height of irresponsibility. It is that argument, not Defendant Fenner's affidavit, which should be disregarded by the Court.

Equally misleading are Plaintiff's references to the settlement communications between the parties. First, because the NSBA rejected the suggestion that it "not seek the remaining $275.00 of [Plaintiff's] 2013 dues," Plaintiff asserts that Defendants are lying when they profess no wish to retain Plaintiff's dues. (Doc. 68, Pl's. Memo. at p. 4.) What defense counsel actually said was "I do not believe that the NSBA has the authority to allow Senator Lautenbaugh access to those funds because they are mandatory dues for Nebraska attorneys." (Doc. 72-1, Cannan

---

[2] Based on the arguments presented in Section II(A), *supra*, Defendants do not believe the Court should consider any evidence of the parties' settlement negotiations. Accordingly, a copy of the referenced e-mail is not attached to this Reply as an exhibit. Defendants will provide a copy of the e-mail at the Court's request.

8

Decl. at Ex. 2.) This is a correct statement of the law.[3] *See* Neb. Ct. R. § 3-803(A)(1) &(D). The NSBA is not empowered to unilaterally decide that any practicing attorney need not pay his dues. That power lies solely with the Nebraska Supreme Court. *Id.* Accordingly, Defendants' rejection of Plaintiff's offer was merely a recognition of the limitations on NSBA's authority—not a tactic.

Second, Plaintiff insinuates that the NSBA threatened to report Plaintiff to the Nebraska Supreme Court if he did not pay his 2013 dues. (Doc. 68, Pl's. Resp. at p. 4.) Again, this is a misrepresentation of the tone and intent of Defendants' communication. Defense counsel explained that if Defendants "were to allow Senator Lautenbaugh access to [his dues], then he would not have paid his required 2013 dues and I believe that the NSBA would be obligated to report the non-payment to the Nebraska Supreme Court." (Doc. 72-1, Cannan Decl. at Ex. 2.) This statement is not a veiled threat. It is an explanation of the law and the basis for Defendants' refusal to sanction the unilateral release and non-payment of Plaintiff's dues.[4] *See* Neb. Ct. R. § 3-803(E). Would Plaintiff have preferred the NSBA remain silent, release the dues and allow him to be reported to the Nebraska Supreme Court? Such a gambit hardly seems in keeping with good faith settlement negotiations, conducted by attorneys with integrity, in a manner this Court would sanction.

Third and finally, Plaintiff alleges that the NSBA attempted to "save face" by offering a settlement in which Plaintiff paid his 2013 dues and then "secretly" received $275.00 from

---

[3] This statement was also true under the old version of the Rules, which mandated that attorneys pay dues to the NSBA. (*See* Pet., 286 Neb. at 1054 & 1057-1060.)

[4] The current version of § 3-803(E) provides, in pertinent part: "All mandatory membership assessments not paid by April 1 of the current calendar year shall be considered delinquent . . . All members who shall fail to pay delinquent assessments within 30 days thereafter <u>shall be reported to the Supreme Court by the Administrator of Attorney Services Division</u> . . . ." Neb. Ct. R. § 3-803(E) (emphasis added). The only differences between the current Rule and the Rule in effect during 2013 is the use of the phrase "mandatory membership" assessments instead of "dues" and requiring the Secretary of the NSBA, rather than the Administrator, to report delinquent dues to the Nebraska Supreme Court. (Order at p. 1060.) In any event, an attorney who does not pay his mandatory dues must be reported.

Defendants as "confidential" settlement proceeds. (Doc. 68, Pl's. Resp. at pp. 4-5.) To be clear, Defendants were not motivated by a desire to "secretly" settle the case; they were motivated by a desire to save the time, money and resources of the parties and judicial system rather than debate the "constitutionality of an obsolete [program]." *Citizens for Responsible Gov't*, 236 F.3d at 1182.

Plaintiff's use of scare quotes and inflammatory language to mischaracterize a generic settlement offer is misleading. Again, the actual text of the communication illuminates Defendants' intentions. They offered to pay Plaintiff his $275 and asked that the parties "keep the terms of the settlement confidential, no admission of liability, mutual release of claims, and dismissal with prejudice." (Doc. 72-1, Cannan Decl. at Ex. 3.) Stated more simply, Defendants asked that the settlement agreement contain the standard terms and conditions that 99.9% of all settlement agreements contain. Such a request is hardly indicative of an evil motive. More to the point, the Association's willingness to pay Plaintiff the amount of his dues actually <u>supports</u> Defendant Fenner's assertion that the "NSBA does not intend to seek Plaintiff's 2013 membership dues currently held in Plaintiff's trust account . . . ." (Doc. 66-1, Fenner Decl. at ¶ 3.) The NSBA was simply trying to find a workable solution that satisfied Plaintiff's demand for $275 and the Nebraska Supreme Court Rules.

Unfortunately, Defendants' attempt to craft a common sense solution to a moot judicial controversy was rejected by Plaintiff. This Court should not follow a similar path. Instead, it should grant Defendants' motion for summary judgment.

## **CONCLUSION**

The parties' relative positions on the constitutionality of the NSBA's former legislative and dues programs have been fully briefed through their cross summary judgment briefs and exhibits. At this point, however, the argument is academic. The contested processes and

funding mechanisms no longer exist. The Court cannot grant any injunctive or declaratory relief that would have any effect on the parties' present or future rights. The Nebraska Supreme Court has implemented new rules that are constitutionally sound. This case is over. The Court should decline the invitation to turn this forum into a "debating societ[y] to determine whether past actions and defunct ordinances were constitutional . . . ." *Utah*, 371 F.3d at 1262. Because the answer to the "crucial question [of] whether granting a present determination of the issues offered . . . will have some effect in the real world" is "no," Defendants are entitled to summary judgment. *Id.* at 1256.

Respectfully Submitted,

**STINSON LEONARD STREET LLP**

By: */s/ Bryan S. Hatch*
John R. Munich, #31474MO (admitted *pro hac vice)*
Jamie Boyer, #55209MO (*pro hac vice* in process)
7700 Forsyth Blvd., Suite 1100
St. Louis, Missouri 63105
Telephone: 314-863-0800
Fax: 314-863-9388
john.munich@stinsonleonard.com
jamie.boyer@stinsonleonard.com

Bryan S. Hatch, #21009
1299 Farnam St., Suite 1500
Omaha, Nebraska 68102
Telephone: 402-930-1709
Fax: 402-930-1701
bryan.hatch@stinsonleonard.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 14th day of April, 2014, the foregoing was filed electronically with the Clerk of Court to be served on all parties of record by operation of the Court's electronic filing system.

                                           */s/ Bryan S. Hatch*
                                           Bryan S. Hatch